**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERRY BLEDSOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-CV-02779-JAR |
| | ) | |
| MIDLAND FUNDING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Midland Funding, LLC's Motion to Dismiss for Lack of Standing or, Alternatively, Motion for Summary Judgment (Doc. 25) and Motion for Summary Judgment (Doc. 65), as well as Plaintiff Terry Bledsoe's Motion for Summary Judgment. (Doc. 69). Each motion is fully briefed and ready for disposition.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Though the docket tells a different story, this is a relatively straightforward dispute concerning the attempted collection of a small credit card debt and alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Plaintiff appears to have owed $674.01 to Citibank, and Defendant (or an affiliate) purchased this account. (Doc. 70 at ¶ 5). The parties spoke concerning the debt on multiple occasions throughout the summer of 2019, with Defendant also sending various letters, and much of the instant dispute centers around what was (or was not) said during these conversations. (Doc. 74 at ¶¶ 6-11).

Plaintiff filed his Complaint in state court with assistance of counsel on September 2, 2019. (Doc. 1-1). Defendant removed the case to this Court on October 16, 2019 because this Court has original jurisdiction over the FDCPA claims. (Doc. 1). In his Complaint, Plaintiff alleges that

1

Defendant violated the FDCPA by (1) making settlement offers misleadingly labeled as time-sensitive; (2) continually calling Plaintiff despite Plaintiff's express request not to be called; (3) informing Plaintiff that he would face litigation if he refused to pay the debt; and (4) suggesting the account would be deleted from Plaintiff's credit reports if payments were made. (Doc. 1-1; Doc. 71 at 1). Even after the case was filed, Defendant continued to mail Plaintiff letters with settlement offers. (Doc. 74 at ¶¶ 18-19).

On December 27, 2019, apparently unbeknownst to and without assistance of Plaintiff's counsel in this case, Plaintiff filed a pro se petition for bankruptcy pursuant to Chapter 7 of the U.S. Bankruptcy Code. (Doc. 26-6, Bankr.E.D.Mo. Petition #19-47935) (hereinafter "*Plaintiff Bankruptcy Case*").[1] Plaintiff did not schedule this case in his original bankruptcy petition. The parties dispute what happened next. Plaintiff asserts that his counsel learned of the bankruptcy petition on February 14, 2020. That same day, Plaintiff notified the bankruptcy trustee ("Trustee") of this case and provided an amended Schedule A/B which included this lawsuit. (Doc. 42-1). Plaintiff claims that the Trustee proceeded to formally abandon the claim on February 19, 2020. (Doc. 43 at 1). Defendant argues that Plaintiff's FDCPA claim was neither formally scheduled nor abandoned by the Trustee. (Doc. 25 at 2). Therefore, according to Defendant, Plaintiff lacks prudential standing in this FDCPA case because his claim belongs to the bankrupt estate. Plaintiff's standing to pursue this case turns entirely on whether the Trustee abandoned the FDCPA claim.

---

[1] The Court takes judicial notice of the records in *Plaintiff Bankruptcy Case*, as federal courts "may take judicial notice of proceedings in other courts that relate directly to matters at issue." *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 996 (8th Cir. 2007).

## II.    LEGAL STANDARDS

A.  <u>Defendant's Motion to Dismiss</u>

Defendant filed a motion to dismiss but "alternatively provide[d] the legal standard for summary judgment" because the motion "requires review of evidence possibly outside the pleadings." (Doc. 25 at 4). By disputing whether this Court has subject matter jurisdiction, Defendant's motion to dismiss is properly brought pursuant to Fed. R. Civ. P. 12(b)(1). *See Four Points Comms. Serv., Inc. v. Bohnert*, No. 4:13-CV-1003 JAR, 2013 WL 4787752, at *1 (E.D. Mo. Sept. 9, 2013). Unlike motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged pursuant to Rule 12(b)(1).

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist. *Osborn v. United States*, 918 F.2d 724, 728-29 (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

Defendant brings a factual attack on jurisdiction. "This does not … convert the 12(b)(1) motion to one for summary judgment." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018) (quoting *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 637 n.4 (8th Cir. 2003)). Plaintiff, the party invoking federal jurisdiction, "must prove jurisdictional facts by a preponderance of the evidence." *Id.* Defendant argues that Plaintiff lacks prudential standing, which requires that Plaintiff "assert his own legal rights and interests" since he "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Huyer v. Van de Voorde*, 847 F.3d 983, 987 (8th Cir. 2017) (Smith, J., concurring) ("Prudential standing

3

encompasses several concerns, including the general prohibition on a litigant's raising another person's legal rights.").[2]

## B. Motions for Summary Judgment

As to the motions for summary judgment, a movant is entitled to summary judgment if they can "show that there is no genuine dispute as to any material fact" and they are "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co.*, 853 F.2d 616, 619 (8th Cir. 1988). The nonmovant, however, "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-87 (1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where parties have filed cross motions for summary judgment, each motion must be evaluated independently to determine whether a genuine issue of material fact exists and

---

[2] The Court acknowledges that there is a "deep and important" circuit split as to whether prudential standing is jurisdictional, and the Eighth Circuit has explicitly deferred the question. *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 938 (8th Cir. 2013) (quoting *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 185 (D.C. Cir. 2012) (Kavanaugh, J., dissenting)). In prior cases, the Eighth Circuit had framed prudential standing as jurisdictional. *Delorme v. United States*, 354 F.3d 810, 815 (8th Cir. 2004) ("A party invoking federal jurisdiction must establish that he has met the requirements of both constitutional and prudential standings."). *But see Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020) (noting that the Supreme Court has narrowed the doctrine of prudential standing). At least one court in this district has recognized that Rule 12(b)(1) is the appropriate mechanism for dismissal for lack of prudential standing. *Burke v. Timely Disbursements Pension and Profit Sharing Trust Fund*, No. 4:13-CV-1677 CAS, 2014 WL 942989, at *3 (E.D. Mo. Mar. 11, 2014) ("Upon reaching a conclusion that the plaintiffs lacked prudential standing, a dismissal for lack of standing would be without prejudice because such dismissal is not an adjudication on the merits. Moreover, because subject matter jurisdiction is lacking, the Court cannot reach defendants' [other] arguments.").

This Court assumes without holding that prudential standing is jurisdictional and that Defendant's motion is properly brought pursuant to Rule 12(b)(1). The Court notes, however, that this determination is not essential to resolution of the case because Defendant reincorporates the prudential standing argument in its motion for summary judgment. (Doc. 67 at 2). Accordingly, whether prudential standing is a jurisdictional issue or not, this Court can consider matters outside the pleadings and the result in this case would be the same.

whether the movant is entitled to judgment as a matter of law. *Exel Inc. v. Int'l Broth. of Teamsters, Local No. 600*, No. 1:14-CV-81 JAR, 2015 WL 3795808, at *3 (E.D. Mo. June 18, 2015).

## III.    DISCUSSION

### A.    Defendant's Motion to Dismiss

*Applicable Bankruptcy Law*

In a Chapter 7 bankruptcy, or "straight bankruptcy," the debtor liquidates his or her assets to pay creditors. 11 U.S.C. §§ 704(a)(1), 726, 727. Upon filing under Chapter 7, the debtor's estate falls under the control of a trustee who is "responsible for managing liquidation of the estate's assets and distribution of the proceeds." *Law v. Siegel*, 571 U.S. 415, 417 (2014). "All legal or equitable interests of the debtor in property as of the commencement of the case" are part of the estate. 11 U.S.C. § 541(a)(1). This includes causes of action that have already been brought by the debtor at the time of the bankruptcy petition. *In re Senior Cottages of America, LLC*, 482 F.3d 997, 1001 (8th Cir. 2007). Once a trustee has been appointed and taken control of the estate, the "Chapter 7 debtor no longer has standing to pursue a cause of action which existed at the time the Chapter 7 petition was filed. Only the trustee, as representative of the estate, has the authority to prosecute and/or settle such cause of action." *Harris v. St. Luke Univ.*, 114 B.R. 647, 648 (E.D. Mo. 1990) (internal quotation omitted).

The debtor regains standing to pursue a cause of action, however, if the cause of action is abandoned by the trustee.[3] 11 U.S.C. § 554 spells out the potential avenues for abandonment:

> § 554(a): After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

---

[3] As Plaintiff notes, a debtor also has standing to pursue a cause of action if the claim is properly exempted from the bankruptcy proceedings. Since Plaintiff's exemption argument appears to depend on the same issue as abandonment – whether the FDCPA claim was in fact scheduled – this Court need not address exemption separately.

§ 554(b): On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

§ 554(c): Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of case is abandoned to the debtor and administered for purposes of section 350 of this title.

§ 554(d): Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

§ 554(a) permits express abandonment by the trustee after notice and a hearing. Alternatively, pursuant to § 554(c), a claim may be abandoned by operation of law if it has been properly scheduled under 11 U.S.C. § 521(a)(1) but not otherwise administered at closing of the bankruptcy. If there is no express abandonment or abandonment by operation of law, then the claim remains property of the estate pursuant to § 554(d). The party seeking to demonstrate abandonment bears the burden of persuasion. *Mele v. First Colony Life Ins., Co.*, 127 B.R. 82, 85 (D.D.C. 1991).

*Express Abandonment (11 U.S.C. § 554(a))*

Pursuant to 11 U.S.C. § 521(a)(1)(B)(i), a debtor shall file a "schedule of assets and liabilities." In a Chapter 7 bankruptcy, property is scheduled via Schedule A/B (Official Form 106 A/B). Plaintiff's initial Schedule A/B did not include the FDCPA claim. *Plaintiff Bankruptcy Case*, Doc. 1 at 18. On February 14, 2020, however, it appears that Plaintiff e-mailed the Trustee an amended Schedule A/B disclosing the FDCPA claim. (Docs. 42-3, 42-4). On February 19, 2020, a meeting of creditors was held and the Trustee's report declared there was no property available for distribution. *Plaintiff Bankruptcy Case*, Docs. 19, 20. Finally, on April 7, 2020, the Trustee responded to an e-mail from Plaintiff's counsel and stated: "I am not asserting an interest in the FDCPA claim. I closed the case." (Doc. 42-5). Plaintiff argues that he properly scheduled the

6

FDCPA claim via e-mail on February 14, 2020, and the Trustee expressly abandoned the claim through formal action on February 19, 2020 and via e-mail on April 7, 2020.

Even accepting Plaintiff's recounting of the facts as true, the Trustee did not expressly abandon the FDCPA claim. § 554(a) requires "notice and a hearing" before a trustee may abandon any property of the estate. In *Barletta v. Tedeschi*, which Plaintiff heavily relies on, the court stated that "[n]otification to creditors is essential" to express abandonment and therefore "there is no abandonment without notice to creditors." 121 B.R. 559, 672 (N.D.N.Y. 1990) (quoting *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 709 (9th Cir. 1986)). Notice and a hearing are critical because they ensure that a trustee does not abandon valuable property rightfully belonging to the estate and, potentially, its creditors. Rule 6007(a) of the Federal Rules of Bankruptcy Procedure also requires that the trustee or debtor "give notice of a proposed abandonment or disposition of property to . . . all creditors."

According to the Local Rules of Bankruptcy Procedure for the U.S. Bankruptcy Court for the Eastern District of Missouri, the "Trustee may announce abandonment of specific property of the estate that is burdensome or of inconsequential value" at the § 341 meeting of creditors. Bankr.E.D.Mo. Local Rule 6007. Plaintiff argues that the Trustee did so here at the meeting of creditors on February 19, 2020, and when the Trustee entered the following in the *Plaintiff Bankruptcy Case* docket:

> I hereby certify that the estate of the above-named debtor(s) has been fully administered . . . . Key information about this case as reported in scheduled filed by the debtor(s) or otherwise found in the case record: This case was pending for 2 months. Assets Abandoned (without deducting any secured claims): $9800.00, Assets Exempt: Not Available, Claims Scheduled: $ 87296.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $87296.00. (Doc. 42-6 at 3).

The applicable local rule requires that the Trustee "file a list of such [abandoned] property" in order to give creditors notice of abandonment and an opportunity to object. Bankr.E.D.Mo. Local Rule 6007. This docket entry by the Trustee includes no reference whatsoever to the FDCPA claim. Instead, the Trustee only formally abandoned $9,800 in assets, exactly the amount provided in Plaintiff's initially filed Official Form 106Sum, with no mention of the FDCPA claim. *Plaintiff Bankruptcy Case*, Doc. 1 at 9. The facts presented by Plaintiff simply do not establish express abandonment of the FDCPA claim by the Trustee.

Finally, Plaintiff argues that the Trustee expressly abandoned the FDCPA claim through his April 7, 2020 e-mail stating "I am not asserting an interest in the FDCPA claim. I closed the case." (Doc. 42-5). As Defendant notes, this statement came after Plaintiff had already been discharged from the bankruptcy, and is factually true but legally irrelevant. Formal abandonment under 11 U.S.C. § 554(a) required that the Trustee provide notice of the abandonment to creditors, which appears not to have occurred. This situation is easily distinguished from *Schaeffer v. First Source Advantage, LLC*, where the bankruptcy court granted the debtor's motion to reopen his bankruptcy case; the debtor then filed an amended Schedule A/B and a Motion for Abandonment of Assets by Consent. No. 4:12-CV-311 CAS, 2013 WL 509001, at *3 (E.D. Mo. Feb. 12, 2013). Plaintiff could have clearly regained prudential standing by reopening his bankruptcy case and ensuring proper abandonment, but has chosen not to do so. Therefore, the FDCPA claim has not been expressly abandoned. *See Stanley v. Sherwin-Williams Co.*, 156 B.R. 25, 27 (W.D. Va. 1993) ("It would be neither desirable nor consistent with § 554 to resolve abandonment questions by returning to the uncertain practice of attempting to determine the trustee's intentions.").

*Abandonment by Operation of Law (11 U.S.C. § 554(c))*

Plaintiff next argues that abandonment occurred via operation of law because the FDCPA claim was properly scheduled and not administered at closing of the estate. There are two distinct bases for Plaintiff's argument under 11 U.S.C. § 554(c): first, that the Trustee's knowledge of the FDCPA claim was sufficient to establish abandonment by operation of law; and second, that Plaintiff properly amended the Schedule A/B through his February 14, 2020 e-mail.

Plaintiff's first claim has been directly contradicted by applicable precedent. In *In re Brokaw*, the court examined the legislative history behind recent amendments to 11 U.S.C. § 554 and found that the trustee's "actual knowledge of the [unscheduled lawsuit] is irrelevant." 452 B.R. 770, 774 (Bankr. E.D. Mo. 2011). Rather than simply e-mailing an amended schedule to the trustee, moreover, the debtor in *In re Brokaw* had actually included the unscheduled lawsuit in a filed Statement of Financial Affairs. This holding was consistent with *Vreugdenhill v. Navistar Int'l Transp. Corp.*, where the Eighth Circuit held that the debtor's claim was not scheduled pursuant to § 554(c) even though the trustee was aware of the claim. 950 F.2d 524 (8th Cir. 1991). "It is not enough that the trustee learns of the property through other means; the property must be scheduled pursuant to section 521(a)(1)." *Id.* at 526. Accordingly, Plaintiff cannot demonstrate abandonment simply by virtue of the Trustee having been made aware of the FDCPA claim.[4]

Plaintiff's second claim is that the February 14, 2020 e-mail itself constituted the filing of an amended schedule.[5] According to Plaintiff, "[p]roperty is 'scheduled' when it [is] listed on a

---

[4] Plaintiff provides no evidence that the Trustee acknowledged receipt of the amended schedule on February 14, 2020. Plaintiff does claim via affidavit that the Trustee "had acknowledged receipt of the above-mentioned," but there is no correspondence reflecting such acknowledgment. (Doc. 47-1 at ¶ 9). There is also no docket entry of any kind on February 14, 2020 in the *Plaintiff Bankruptcy Case*. The Court's decision would not be changed even if the Trustee had acknowledged receipt, but it was Plaintiff's burden to prove such acknowledgment.

[5] Plaintiff argues that this Court should liberally construe Plaintiff's pro se filings in his bankruptcy proceedings. (Doc. 43 at 4). The Court generally recognizes this fundamental principle. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). It is a unique circumstance, however, when this Court is being asked to liberally construe Plaintiff's filings from an

piece of paper entitled 'schedule.'" (Doc. 43 at 5). It should go without saying that more is required in order to schedule a formal legal document affecting the rights of creditors in a bankruptcy proceeding. Rule 1009 of the Federal Rules of Bankruptcy Procedure, while stating that a schedule may be "amended by the debtor as a matter of course at any time before the case is closed," first requires that the debtor "give notice to the trustee and to any entity affected thereby." Then, "[o]n motion of a party in interest, after notice and a hearing, the court may order any . . . schedule . . . to be amended and the clerk shall give notice of the amendment to the entities designated by the court." It is clear from this rule that Plaintiff's FDCPA claim was not "scheduled under section 521(a)(1)" (as required for abandonment under § 554(c)) by simply e-mailing an amended schedule to the Trustee. Plaintiff has not demonstrated by a preponderance of the evidence that the amended Schedule A/B was, in fact, scheduled.

Upon filing for Chapter 7 bankruptcy, Plaintiff lost prudential standing to pursue his FDCPA claim in this Court because the claim belonged to the bankrupt estate. Plaintiff could have regained standing, however, if the Trustee had abandoned the FDCPA claim pursuant to 11 U.S.C. § 554. Because Plaintiff has not demonstrated by a preponderance of the evidence that the Trustee either expressly abandoned the claim under § 554(a) or that the claim was scheduled and then abandoned by operation of law under § 554(c), the claim remains in possession of the bankrupt estate. Therefore, Plaintiff lacks prudential standing to bring the FDCPA claim here, and this Court must dismiss Plaintiff's Complaint without prejudice.

---

entirely separate matter. Plaintiff is represented by counsel in the present case; moreover, Plaintiff's counsel in this case directly communicated with the Trustee in an attempt to resolve this exact issue. Since Plaintiff is represented by counsel here, no liberal construction is necessary, nor would it change the outcome of this case.

B.  Motions for Summary Judgment[6]

The FDCPA is designed "to eliminate abusive debt collection practices by debt collectors" and "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). It is a strict liability statute, meaning a consumer need not show intentional conduct by the debtor in order to establish a violation. *Mayhall v. Berman & Rabin, P.A.*, No. 4:13-CV-0175 AGF, 2014 WL 340215, at *4 (E.D. Mo. Jan. 30, 2014). In order to prevail against Defendant, Plaintiff must prove (1) that he has been the object of collection activity arising from a consumer debt; (2) that Defendant qualifies as a debt collector; and (3) that Defendant violated, by act or omission, a provision of the FDCPA. *Martin v. United Collections Bureau, Inc.*, No. 4:14-CV-804-JAR, 2015 WL 4255405, at *4 (E.D. Mo. July 14, 2015).

Both parties have filed motions for summary judgment. Plaintiff alleges that Defendant violated the FDCPA in four respects. First, Plaintiff claims Defendant made multiple settlement offers deceptively framed as time-sensitive in violation of 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."). Second, Plaintiff claims Defendant violated 15 U.S.C. § 1692d(5) by repeatedly calling Plaintiff after being requested to cease calling. Third, Plaintiff claims that Defendant violated 15 U.S.C. § 1692e(5), prohibiting the "threat to take any action . . . that is not intended to be taken," by threatening legal action when none was intended. Finally, Plaintiff argues that Defendant violated 15 U.S.C. § 1692e by deceptively informing Plaintiff that the credit report would be deleted from his account if he made payments.

Defendant essentially responds to each of these claims by arguing that its actions do not rise to the level of an FDCPA violation as a matter of law. The parties also dispute key facts, such

---

[6] The Court notes that Defendant reincorporated its argument that Plaintiff lacks standing in the motion for summary judgment. (Doc. 67 at 2).

as whether Plaintiff in fact requested that Defendant stop calling. (Doc. 74 at ¶ 22). Defendant also contends that Plaintiff has not established that the debt was a consumer debt, which is a core requirement for an FDCPA claim, though it certainly appears clear to the Court that this is indeed a consumer debt.

Ultimately, the parties' arguments on summary judgment do not affect this Court's analysis of the prudential standing issue. The summary judgment motions exclusively concern whether Plaintiff has a viable FDCPA claim. But as discussed above, any such claim, viable or not, belongs to the bankrupt estate. The Eighth Circuit has specifically cautioned that standing is a threshold inquiry which "eschews evaluation of the merits." *Coal. for Env't v. Volpe*, 504 F.2d 156, 168 (8th Cir. 1974); *see also City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). Accordingly, the motions for summary judgment will be denied as moot,

## IV.    CONCLUSION

When Plaintiff filed for Chapter 7 bankruptcy, his FDCPA claims against Defendant became part of the bankrupt estate and he lost prudential standing in this case. Having thoroughly analyzed each potential avenue for abandonment, this Court finds that Plaintiff's FDCPA claims against Defendant were neither expressly abandoned nor abandoned by operation of the law. The Trustee never provided creditors with notice and a hearing regarding the FDCPA claims, and e-mails are not a substitute for formal legal filings, especially in the bankruptcy context. Therefore, Plaintiff lacks prudential standing because his claims remain with the bankrupt estate, and this case must be dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Midland Funding, LLC's Motion to Dismiss for Lack of Standing or, Alternatively, Motion for Summary Judgment (Doc. 25) is **GRANTED**. This case is hereby **DISMISSED without prejudice** because Plaintiff lacks prudential standing.

**IT IS FURTHER ORDERED** that the Motions for Summary Judgment filed by Plaintiff Terry Bledsoe (Doc. 69) and Defendant Midland Funding, LLC (Doc. 65) are **DENIED as moot**.

Dated this 23rd day of February, 2021.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

13